UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
———————————————————————

JAMES M., REPRESENTATIVE OF
ERIC J. M.'S ESTATE,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
———————————————————————

**DECISION AND ORDER**

19-CV-1369S

     1.    Plaintiff James M.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his son, Eric J. M. (hereinafter "Claimant"), application for disability insurance benefits under Titles II of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

     2.    Claimant protectively filed his applications with the Social Security Administration on June 16, 2011.  Plaintiff alleged disability beginning June 13, 2006, due to left ankle osteoarthritis; lumbar degenerative disc disease; bunion on both feet; various mental impairments including post-traumatic stress disorder ("PTSD"), alcohol abuse disorder, major depressive disorder.  The ALJ deemed Claimant's asserted various mental impairments to be non-severe [R.[2] at 1601].  Claimant sought coverage through

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff and Claimant by their first names and last initials.

[2]Citations to the underlying administrative record are designated as "R."

the date last insured, September 30, 2011 [R. at 1600-01, 1607].  Claimant's application

was denied, and he thereafter requested a hearing before an administrative law judge

("ALJ").

3.      On January 18, 2013, ALJ William Weir held a hearing at which Plaintiff—

represented by counsel—appeared and testified.  (R. at 31-72, 1713-54.)  Plaintiff was

43 years old as of the date last insured, in September 30, 2011, he had a high school

education and was employed as a flight attendant (a medium exertion job) (R. at 1600,

1606, 1608).  During the first hearing, Claimant complained of ankle swelling, that he

could not jump or run, pain aggravated by walking and damp or cold weather (R. at 42,

44-45).  He also complained of lower back pain, testifying that he could stand for twenty

to thirty minutes and needed to shift while sitting and standing (R. at 44, 46).

4.      The ALJ considered the case *de novo* and, on June 24, 2013, issued a

written decision denying Plaintiff's applications for benefits.  After the Appeals Council

denied Claimant's request to review the ALJ's decision (R. at 1), he filed an action,

challenging the Commissioner's final decision.  (R. at 1697.)

5.      Judge Michael Telesca in Eric [M.] v. Colvin, No. 14CV828, 2017 WL

2713727 (W.D.N.Y. June 24, 2017), granted Claimant's motion for judgment on the

pleadings and remanded for further proceedings (R. at 1697-1707).  Judge Telesca

remanded for consideration of Claimant's mental health impairment, "including his

diagnosis of generalized anxiety disorder and PTSD" (R. at 1702), id., 2017 WL 2713727,

at *3.  Judge Telesca found that there was ample evidence that Claimant suffered from

PTSD as found by the ALJ initially but also anxiety disorder (R. at 1700), id., 2017 WL

2713727, at *2.  Judge Telesca faulted the ALJ for not explaining his finding that

generalized anxiety disorder was not a severe impairment, making "a very perfunctory analysis of [Claimant's] mental health treatment," tying Claimant's hospitalization to alcohol abuse (R. at 1701), id., 2017 WL 2713727, at *2.  The ALJ made "little reference to the significance of [Claimant's] anxiety or PTSD symptoms, apparently concluding that these symptoms, apparently concluding that these symptoms were significant only when coinciding with alcohol abuse" (R. at 1701), id., 2017 WL 2713727, at *2.

6.    Judge Telesca also found that Claimant's physical RFC finding for sedentary work was unsupported by substantial evidence (R. at 1703-05), id., 2017 WL 2713727, at *3-4.  Judge Telesca directed the ALJ "to obtain vocational expert testimony regarding plaintiff's nonexertional impairments if the RFC finding on remand indicates that nonexertional impairments will 'have more than a negligible impact on [plaintiff's] ability to work," (R. at 1707, quoting Cortright v. Colvin, No. 13CV5422-FM, 2014 WL 4384110, at *14 (S.D.N.Y. Aug. 29, 2014) (Maas, Mag. J.)), id., 2017 WL 2713727, at *4.

7.    Following remand by the Appeals Council pursuant to this Court's Order (R. at 1709, 1711), the ALJ held a second hearing on Apr. 15, 2019, at which Claimant—represented by counsel—and Vocational Expert Kathleen Doehla, psychological expert Sharon Rae Kahn, Psy.D., and medical expert Dr. Jeff Hansen appeared and testified (R. at 1598, 1636-73).  Claimant testified that he could not work as an elementary school teacher because his physical ailments required him to stand up and sit down frequently that would be distracting to the students (R. at 1662), that he needed to change positions (R. at 1663).  He stated that he did not obtain relief from medication or a chiropractor (R. at 1662-63).

8.     The ALJ rendered a second written decision again denying Claimant's application for benefits (R. at 1598).   Given the remand, the ALJ's second decision became the final decision of the Commissioner.

9.     Both parties again moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 15, 19.)  Plaintiff (on behalf of Claimant's estate) filed a suggestion of death on January 31, 2020, and moved to substitute the estate for Claimant (Docket Nos. 6, 11; see also Docket No. 12, Order substituting parties; cf. Docket Nos. 9, 10).  Plaintiff filed a response on August 12, 2020 (Docket No. 20), stating that a reply was unnecessary (id. at 1).  At which time, this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is granted, and Defendant's Motion for Judgment on the Pleadings (Docket No. 19) is denied.

10.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

11.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams _ex rel._ Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a _de novo_ review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

12.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142 (1987).

13.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age,

> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, he has the residual functional capacity to perform
> his past work.  Finally, if the claimant is unable to perform his
> past work, the [Commissioner] then determines whether there
> is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

14.    Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering his physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460

(1983).

15.    As found by Judge Telesca, Eric [M.], supra, 2017 WL 2713727, at *1 (R.

at 1698-99), the ALJ analyzed Claimant's claim for benefits under the process set forth

above.  "At step one, the ALJ found that plaintiff had not engaged in substantial gainful

activity since June 13, 2006, the alleged onset date.  At step two, the ALJ found that

plaintiff suffered from the following severe impairments:  alcohol abuse disorder; post-

traumatic stress disorder ('PTSD'); left ankle pain status post injury and surgery; low back

pain; and obstructive sleep apnea.

6

16.     "At step three, the ALJ found that plaintiff's 'impairments, including the alcohol abuse disorder, [met] sections 12.06 and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1 [the listings].'  [(R. at 20)].  However, the ALJ found that if plaintiff 'stopped the alcohol abuse,' his impairments would be severe but would not meet or medically equal any listed impairment.  Before proceeding to step four, the ALJ determined that plaintiff retained the residual functional capacity ('RFC') to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), 'except that he would be limited to simple, repetitive and routine tasks with no more than occasional interaction with co-workers, supervisors, and the public.' [(R. at 22)].  At step four, the ALJ determined that, even if plaintiff stopped alcohol abuse, he would be unable to perform past relevant work.  At step five, the ALJ found that if plaintiff stopped alcohol abuse, considering plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that he could perform.  Accordingly, the ALJ found that plaintiff was not disabled." Id.

17.     Following remand, the ALJ again applied the five-step sequential process. The ALJ then found that Claimant was last insured on September 30, 2011 (R. at 1600). At step one, the ALJ found that Claimant did not engage in substantial gainful activity during the period from June 13, 2006, to September 30, 2011 (R. at 1601).  At step two, the ALJ found Claimant had the following severe impairment:  left ankle osteoarthritis, lumbar degenerative disc disease, and bunions on both feet, but deemed his mental impairments to be non-severe (R. at 1601-02).  Applying special technique for evaluating mental impairments (see Docket No. 19, Def. Memo. at 8), the ALJ found no limitation in understanding, remembering, or applying information and adapting or managing oneself

and found mild limitations in interacting with others and concentrating, persisting, or maintaining pace (R. at 1601-02).

18.    At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that med or medically equaled the severity equaled the severity of a listed impairment under Social Security regulations (R. at 1602).

19.    Next, the ALJ found that Claimant retained the RFC to perform light work except

> "s st at will hourly momentary change with no loss in productivity, cane when ambulating 1/c 10 in free hand, continuous HFF, occ kneel, ben, crouch, stoop, no crawling, no unprotected heights machinery tools chemicals, no uneven surfaces"

(R. at 1603; see also Docket No. 15, Pl. Memo. at 5 & n.1).  This appears to be sit/stand at will with hourly momentary change without loss of productivity; use cane for walking and can carry ten pounds in his free hand; that he could perform light work with continuous handle, finger, and feel; occasional kneel, bend, crouch, stoop, but no crawling, no working from unprotected heights, or around machinery, tools, chemicals; and avoid uneven surfaces (see Docket No. 15, Pl. Memo. at 28; R. at 1605, 1647-48 (Dr. Hansen's testimony)).

20.    At step four, the ALJ found Claimant is unable to perform any past relevant work, here as a flight attendant.  (R. at 1606.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. at 1606-07.)  Posing these facts to the vocational expert, she opined that Claimant is able to perform such occupations as an address clerk or sorter (both sedentary jobs). (R. at 1607.)  Accordingly, the ALJ found that Claimant is not disabled.  (R. at 1608.)

21.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to evaluate properly Claimant's mental impairments, despite the similar issue that resulted in the remand (Docket No. 15, Pl. Memo. at 1, 21-27).  Plaintiff also contends that the ALJ did not properly evaluate Claimant's physical RFC (id. at 1, 27-30).  For the reasons that follow, this first argument is accepted and Plaintiff's Motion (Docket No. 15) is granted.

22.     Defendant notes that Claimant's claims are time-delimited from the onset date June 13, 2006, to September 30, 2011; the limiting effects of his impairments after that date are irrelevant (Docket No. 19, Def. Memo. at 6-7).  Generally, Defendant argues that substantial evidence supports the ALJ's findings, from Dr. Kahn's and Dr. Hansen's testimony and other evidence of record (id. at 7-12, 12-17).

23.     Defendant argues that the ALJ found no limitations or mild limitations for the four mental impairment domains (R. at 1601-02: Docket No. 19, Def. Memo. at 8).  Since the ALJ did not find a moderate limitation for any of these domains, the regulations compel denying non-severe mental limitations (Docket No. 19, Def. Memo. at 8-9).  Defendant argues that merely having an impairment, without at least minimal limitation on Claimant's ability to work, does not make that impairment severe (see id. at 10-11).  Defendant dismisses Plaintiff's contention as an attempt to suggest a different evidentiary interpretation and conclusion from the medical record, where the ALJ's findings govern (id. at 11).

24.     In concluding that a full reply was unnecessary, Plaintiff characterized Defendant's response to be restatements of the ALJ's "unsupported findings and post

hoc rationalizations, which cannot excuse the ALJ's errors" (Docket No. 20, Pl. Reply Memo. at 1).

25.     As for Claimant's mental impairment, Plaintiff argues the Claimant suffered from longstanding mental health symptoms that worsened over time, leading to his chronic alcohol use (Docket No. 15, Pl. Memo. at 21).  This was the reason for the initial remand in this case (id.).  The ALJ initially found Claimant had a severe impairment due to alcohol abuse and PTSD (R. at 20; Docket No. 15, Pl. Memo. at 24).  The ALJ considered whether the impairment was severe factoring in alcohol abuse (finding that Claimant's impairment met the listing sections 12.06 and 12.09) and then if Claimant stopped alcohol abuse, finding that the remaining limitations were severe (R. at 20-21).  Judge Telesca later remanded this case for evaluation of Claimant's generalized anxiety disorder, Eric [M.], supra, 2017 WL 2713727, at *2-3 (R. at 1699-1703) (Docket No. 15, Pl. Memo. at 25).

26.     Impartial psychological expert Dr. Kahn found that Claimant's mental disorders could have been caused by alcohol abuse that was not currently resolved (R. at 1601; Docket No. 15, Pl. Memo. at 5).

27.     At step two on the analysis, the finding of a severe impairment is intended to screen out de minimis claims.  Plaintiff here established that Claimant asserted more than slight mental abnormalities and conditions that were not alcohol dependent.

28.     Defendant fails to explain how the ALJ on remand to consider one mental impairment (generalized anxiety disorder) lead to reexamining the finding of severe impairment the ALJ initially made for alcohol abuse and post-traumatic stress disorder (R. at 20).  Judge Telesca did not call for reexamining the alcohol abuse or PTSD findings,

but that the ALJ consider Claimant's generalized anxiety disorder and perfunctory discussion of his PTSD as it connected with his alcohol abuse, Eric [M.], supra, 2017 WL 2713727, at *2 (R. at 1701).  The case was remanded "for further consideration of [Claimant's] mental health impairments, including his diagnosis of generalized anxiety disorder and PTSD.  On remand, the ALJ is instructed to specifically evaluate whether plaintiff's generalized anxiety disorder is a severe impairment," id. (R. at 1702).

29.     As argued by Plaintiff (Docket No. 15, Pl. Memo. at 25), the ALJ did not evaluate Claimant's generalized anxiety disorder.  The ALJ dismissed Claimant's mental impairments collectively as arising while he was abusing alcohol, citing his admissions for alcohol treatment (R. at 1601).  In reconsidering Claimant's alcohol abuse disorder and PTSD, the ALJ tied his mental condition to his sobriety, including citing medical expert Dr. Kahn's opinion (R. at 1642-43, 1601) that Claimant's mental disorder could have been caused by alcohol abuse "but he had so few periods of sobriety during the period at issue that his symptoms never completely resolved" (R. at 1601).  Questioned by Claimant's attorney, Dr. Kahn testified that Claimant's depression and anxiety were interrelated with his symptoms of alcohol withdrawal and alcohol abuse (R. at 1643; see Docket No. 15, Pl. Memo. at 23-24).  The ALJ did not address Claimant's condition in light of his alcohol abuse or the reversal from his first decision that found (with or without consideration of alcohol) that Claimant had severe mental impairments.  Meanwhile, Claimant testified that he considered his drinking and his other mental impairments were separate (R. at 1659).

30.     The ALJ relied upon the opinion of Dr. Kahn, but she addressed later steps in the analysis, concluding that Claimant's mental impairment did not meet any of the relevant listings and explaining that since alcohol dependence and abuse is not a

classification under the Social Security regulations it was difficult to evaluate Claimant's other mental impairments (R. at 1641).

31.     Both Dr. Kahn and the ALJ relied upon the fact that, despite his alcohol abuse, Claimant was a college student and obtained his degree, leading the ALJ to conclude that hie had no limitation in understanding information (R. at 1601, 1641-42 (Dr. Kahn's testimony)).  Defendant argues that Claimant otherwise engaged in normal activities of daily living despite the impairments, he exhibited no difficulty dealing with stress and maintaining relationships, and he was able to manage his finances, provide student teaching, and care for himself (Docket No. 19, Def. Memo. at 9; R. at 1601-02, 305-06, 317, 380-84 (Dr. Renee Baskin evaluation, Aug. 19, 2011), 255-374 (VAMC medical records, Aug. 12, 2009, to June 28, 2011), 416-1490 (VAMC treatment notes Jan. 1, 2007, to Aug. 11, 2012), 1501-59 (VAMC medical records Aug. 15, 2012, to Sept. 15, 2012)).  Defendant concludes that Claimant's earning a master's degree showed that his mental impairments were not severe (Docket No. 19, Def. Memo. at 10).

32.     On remand, the ALJ disregarded his earlier finding that Claimant's alcohol abuse and his PTSD without factoring in alcohol use were severe mental impairments and failed to evaluate Claimant's generalized anxiety disorder.  This is sufficient basis for a further remand.  Absent consideration of these impairments at step two, analysis at subsequent steps is erroneous.  The legal error is not construction of the evidence (but cf. Docket No. 19, Def. Memo. at 11) but the failure of the ALJ to evaluate Claimant's generalized anxiety (as ordered) and the prior recognition of Claimant's PTSD.

33.     Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is granted on Claimant's mental health assessment, Defendant's Motion for Judgment (Docket

No. 19) is denied on this point, and the case is remanded to the Commissioner for further proceedings.

34.     As for the physical RFC, Plaintiff argues that the ALJ made highly specific sit/stand option findings that were not supported by the evidence, opinions in the record, or Claimant's testimony (Docket No. 15, Pl. Memo. at 27).  The ALJ based his finding on the independent medical expert Dr. Hanson's opinion, but Plaintiff points out that Dr. Hansen did not make any sit/stand option (id. at 28).

35.     Defendant responds that there was enough evidence that Claimant could perform sedentary work (although the ALJ found that Claimant could perform light work[3]) with the condition that he needed to change positions once per hour and use a cane when ambulating (Docket No. 19, Def. Memo. at 13).  The ALJ found that Claimant had additional limitations that led the ALJ to evaluate Claimant's ability to perform sedentary work (R. at 1607).

36.     Defendant emphasized that Claimant failed to seek specialized treatment for back pain and had only intermittent and conservative treatment for low back, ankle, and foot pain (id.).  Defendant repeats that Claimant obtained his graduate degree despite the physical (as well as claimed mental) impairments (id.).  Defendant contends that Dr. Hansen's opinion supports the physical RFC (id. at 12-17; R. at 1605, 1644-46).

37.     Plaintiff now argues that the ALJ rendered a specific sit/stand option based upon his lay opinion (Docket No. 15, Pl. Memo. at 27-30).  He contends that such a specific finding was not supported by substantial evidence (id. at 27-28).  Plaintiff found

[3]See 20 C.F.R. § 404.1567(b) (defining light work), (a) (defining sedentary work).

only two possible sources for the sit/stand option, Dr. Hansen's opinion and Claimant's testimony (id. at 28-29; R. at 1647-48, 46-47, 379, 1663).

38.    Dr. Hansen opined that Claimant could perform light duty by standing up to six hours with sit option every hour (R. at 1647).  Plaintiff argues that Dr. Hansen lacked evidence to support this finding (Docket No. 15, Pl. Memo. at 28).  Dr. Hansen, however, based his findings upon his expert review of the record (R. 1644).

39.    Claimant's own testimony stated that he needed to change position from sitting to standing more frequently than the hourly change found by the ALJ (R. at 1663; Docket No. 15, Pl. Memo. at 29).  This differs from the initial physical RFC based upon the opinion of another doctor (Dr. Schwab) that Claimant had moderate limitations that Claimant had contended was excessively vague, Eric [M.], supra, 2017 WL 2713727, at *3-4 (R. at 1703-06).  Even there, Judge Telesca held that Dr. Schwab based that opinion on his consulting physical examination and thus was not vague, id. at *4 (R. at 1705).

40.    As Defendant argues (Docket No. 19, Def. Memo. at 15), Plaintiff seeks to reweigh the physical RFC evidence in Claimant's favor.  This Court is not in a position to weigh evidence; the ALJ did and could rely upon the professional opinion of impartial medical expert, Dr. Hansen.

41.    With the remand ordered for Claimant's mental RFC, however, this Court need not address his physical RFC.  The ALJ may revisit this physical RFC finding during the remand on the mental RFC.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 19) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings, consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:         December 4, 2020
               Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge